UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JUAN GONZALEZ, | : | |
| --- | --- | --- |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 08CV1102 (WWE) |
| | : | |
| | : | |
| OFFICER CHAD STRINGER, | : | |
| OFFICER JEFFERY KALOLO, | : | |
| OFFICER MICHAEL MEEHAN, | : | |
| OFFICER GEORGE POTTS, | : | |
| OFFICER BRIAN FAHEY, | : | |
| OFFICER CARL BRISSON-LOPEZ, | : | |
| OFFICER CORNELIUS RODGERS, | : | |
| OFFICER JOHN CLARK, | : | |
| OFFICER HUMBERTO MORALES, | : | |
| and THE CITY OF NEW LONDON, | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON THE MOTION FOR SUMMARY JUDGMENT**

Plaintiff Juan Gonzalez alleges that defendants Chad Stringer, Jeffery Kalolo, Michael Meehan, George Potts, Brian Fahey, Carl Brisson-Lopez, Cornelius Rodgers, John Clark, Humberto Morales and the City of New London violated his constitutional rights.[1] Specifically, plaintiff asserts that (1) Stringer, Kalolo, Meehan, Potts, Lopez, Rodgers, Clark and Fahey violated his Fifth and Fourteenth Amendment right to be free from excessive force and his Eighth Amendment right to be free from cruel and unusual punishment; (2) Officer Morales violated his Fifth and Fourteenth Amendment right to be free from excessive force and his Eighth Amendment right to be free from cruel and unusual punishment; and (3) the City of New London violated his constitutional rights

---

[1] The individual defendants are all police officers for the City of New London. The complaint only identifies each individual as an officer. This ruling references the rank of each defendant officer as identified in papers to the unopposed motion for summary judgment.

through its failure to promulgate and enforce appropriate practices and customs regarding the use of force and through inadequate training and supervision of its police officers.

Defendants have filed a motion for summary judgment on the complaint in its entirety. Plaintiff has failed to file an opposition to that motion. Upon review of the merits and absent objection, the Court will grant the motion for summary judgment.

## BACKGROUND

Defendants have filed statements of fact in compliance with Local Rule of Civil Procedure 56(a)(1). Plaintiff has not filed any response to the motion, and accordingly, consistent with Local Rule 56(a)(1), the Court will accept the material facts asserted in the statement of facts and supported by evidence as admitted by plaintiff.

On July 28, 2005, defendant Officer Brisson-Lopez was on patrol in the City of New London. He noticed a vehicle with its parking lights on parked across the street from the address of a known heroin dealer. Officer Brisson-Lopez observed three males in the vehicle, who appeared to be slouching in their seats to avoid detection. Plaintiff was seated in the rear driver's seat of the vehicle.

Officer Brisson-Lopez radioed to police headquarters that he "would be out with a suspicious vehicle" and gave his location. He then approached the vehicle and observed that plaintiff's right hand was inside the waistband of his pants.

Due to his observation of plaintiff's hand position, Officer Brisson-Lopez believed plaintiff was trying to hide either drugs or a weapon. He ordered plaintiff and the other individuals to show their hands. After plaintiff refused to comply with his order, Officer Brisson-Lopez drew his firearm. Plaintiff finally complied with the order.

Sergeant Kalolo and Officers Clark, Potts, Meehan, Rodgers, Fahey and Stringer arrived shortly thereafter. Officer Stringer took out his police canine ("K-9") Kiva and told plaintiff and the other individuals not to move or flee.

Officer Meehan ordered plaintiff to step away from the vehicle. After searching plaintiff, Officer Meehan found a packet containing seven grams of cocaine. As Officer Meehan attempted to place handcuffs on plaintiff, plaintiff began to struggle and resist. Officers Fahey and Rodgers assisted Officer Meehan, but they were unsuccessful in handcuffing plaintiff. Plaintiff broke free of the officers' grasp and fled on foot.

Officer Stringer yelled that he would release his K-9 if plaintiff did not stop running. After plaintiff failed to comply, Officer Stringer released K-9 Kiva. Officer Stringer followed after Kiva, while the other defendants remained with the stopped vehicle.

Plaintiff struggled with Kiva and sustained several dog bite injuries.

When Officer Stringer determined that plaintiff could be detained, he instructed Kiva to release plaintiff.

An ambulance was called to treat plaintiff's injuries. Plaintiff was taken to Lawrence and Memorial Hospital ("L&M Hospital") for treatment of his injuries. He told the hospital staff that he had been smoking angel dust and did not know what had happened.

Plaintiff was charged with possession of crack cocaine, possession of crack cocaine with intent to sell, possession of cocaine with intent to sell within fifteen hundred feet of public housing, and resisting arrest.

On October 26, Sergeant Potts and Officer Clark observed plaintiff riding in the

passenger seat of a vehicle. Sergeant Potts was aware that there was an active felony re-arrest warrant for plaintiff. Sergeant Potts and Officer Clark radioed for a marked police car to stop the vehicle. Officer Morales was in the area and stopped the vehicle in which plaintiff was a passenger. Sergeant Potts and Officer Clark also stopped at the scene in their unmarked police vehicle. Officer Morales retrieved his police K-9 Niko from his vehicle and approached the passenger side of the stopped vehicle. Sergeant Potts and Officer Clark approached the stopped vehicle as well.

Officer Morales ordered plaintiff to exit the vehicle numerous times but he did not comply. Plaintiff locked the door when Officers Morales and Potts attempted to open the door to the passenger's seat. Officer Clark yelled to the other officers that he had just observed plaintiff place what appeared to be crack cocaine in his mouth. Plaintiff refused to comply with the officers' orders to open the door. Sergeant Potts attempted to open the passenger side door by kicking and prying at the window, but he was unable to gain entry.

The officers observed plaintiff struggle with the driver of the vehicle. Plaintiff reached over the vehicle's driver, started the vehicle, placed it in drive, and stepped on the accelerator. As the vehicle sped off, it hit Officer Clark in the arm, almost knocking him to the ground.

The officers followed plaintiff at high speed though the streets of New London and onto Interstate-95 ("I-95"). After plaintiff crashed his vehicle into a guardrail between the northbound and southbound sides of I-95, he fled on foot running across the I-95 southbound lanes of traffic into a wooded location. Plaintiff then hid under an abandoned tractor-trailer.

Defendant Officer Morales sent his police K-9 Niko to locate plaintiff. After approximately fifteen minutes of tracking, Niko pulled toward a particular eighteen wheeler tractor-trailer. Officer Morales did not know whether plaintiff was armed and gave Niko the command to engage plaintiff if located. Subsequently, Officer Morales heard a male voice yell from underneath the trailer, and he observed Niko and a male that he recognized as plaintiff emerge from under the trailer.

Officer Morales ordered plaintiff to show his hands. At first, plaintiff failed to comply with Officer Morales' orders to show his hands. However, after plaintiff complied with the order to show his hands, Officer Morales commanded Niko to disengage. Plaintiff was then placed in handcuffs and an ambulance was called to the scene to treat plaintiff's injuries.

The ambulance took plaintiff to L&M Hospital where he was treated. At the hospital, plaintiff informed the medical staff that he had used multiple drugs that day, and he told New London Police Officers that he had just smoked PCP and did not know what he was doing. Thereafter, plaintiff received additional follow-up treatment from the Department of Corrections.

Plaintiff was charged with possession of crack cocaine, tampering with evidence, assault on a police officer, larceny in the first degree, reckless endangerment, interfering with police, criminal trover in the second degree, escape from custody, failure to appear, engaging an officer in pursuit, reckless driving and operating a motor vehicle with a suspended license.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American Int'l Group, Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

When a non-moving party fails to respond to a motion for summary judgment, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). District courts have

6

granted unopposed motions for summary judgment so long as the movants have satisfied the burden of production. Capogrosso v. Lecrichia, 2010 WL 2076962, *4 (S.D.N.Y. 2010).

Due Process Claims

Plaintiff claims defendants' conduct violated his constitutional due process rights pursuant to the Fifth and Fourteenth Amendments. However, plaintiff's due process claims fail as a matter of law.

The Fifth Amendment applies to deprivations caused by the federal government rather than a municipality and its employees. See Dusenbery v. United States, 534 U.S. 161, 167 (2002).

Plaintiff cannot maintain a substantive due process claim pursuant to the Fourteenth Amendment based on the alleged use of excessive force because such violation is covered by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989) (the generalized notion of substantive due process does not apply where Fourth Amendment provided specific protections). Summary judgment will enter.

Claims of Cruel and Unusual Punishment Pursuant to Eighth Amendment and Fourteenth Amendment

Plaintiff alleges that his constitutional right to be free from cruel and unusual punishment has been violated. The Court construes this claim to be based on alleged inadequate medical care. The Court will grant summary judgment on these claims.

As an initial matter, plaintiff cannot maintain this claim pursuant to the Eighth Amendment because his claims concern conduct that occurred prior to conviction. See City of Revere v. Mass. General Hosp., 463 U.S. 239, 244 (1983) (Eighth Amendment

scrutiny is appropriate after state has secured a formal adjudication in accordance with due process).

Further, no evidence supports an allegation that defendants violated the Fourteenth Amendment Due Process Clause based on inadequate medical care while in custody. Plaintiff must show that defendants violated his due process rights by denying him treatment to remedy a serious medical condition due to their deliberate indifference to that need. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir.1996). Due process is satisfied where the arrestee is taken "promptly" to a hospital that provides the treatment necessary for his injury. Revere, 463 U.S. at 245. No evidence raises an inference that plaintiff was not taken promptly to the hospital for treatment of his injuries. Summary judgment will be granted on this claim.

Fourth Amendment Excessive Force Claims Against Individual Defendants

Plaintiff's claims of excessive force are properly reviewed under the Fourth Amendment. Defendants assert that the use of force in conjunction with plaintiff's two arrests was reasonable. In the alternative, defendants maintain that the officers are entitled to qualified immunity.

Whether the use of force in a particular seizure is "reasonable" is governed under the Fourth Amendment standard of reasonableness, which determination requires consideration of the facts and circumstances of the particular case. Graham v. Connor, 490 U.S. 386, 396 (1989). Police officers must make "split-second judgments" in circumstances that are "tense, uncertain and rapidly evolving," and therefore, the reasonableness of the force applied must be judged from an on-scene perspective and not with the 20/20 vision of hindsight. Saucier v. Katz, 533 U.S. 194, 205 (2001).

Here, the undisputed record reveals that the officers are entitled to the shield of qualified immunity. "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007). The objectively reasonable test is satisfied if officers of reasonable competence could disagree on the legality of the defendant officer's actions. Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The right to be free from the use of excessive force was "clearly established" at the time of plaintiff's arrest. Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002). Generally, where the circumstances are disputed, and contrasting accounts raise issues as to the reasonableness of the force, summary judgment cannot be granted on a defense of qualified immunity. Id. In this instance, there are no conflicting accounts presented. Where a party does not respond to arguments made in a summary judgment motion, defendants need only satisfy a "modest threshold burden" of demonstrating entitlement to the relief requested in the motion. See Rusyniak v. Gensini, 2009 WL 3672105, *1 n.1 (N.D.N.Y. 2009).

Accordingly, in light of the undisputed facts that, on July 28, 2005, plaintiff broke free of the officers' grasp and was fleeing when Officer Stringer ordered him to stop and informed him that failure to comply would result in release of the K-9 Kiva, the Court finds that the release of the police dog was objectively reasonable.

Similarly, the undisputed facts establish that defendants' conduct, including

Officer Morales' release of the K-9 Niko, was objectively reasonable on October 26, 2005. Plaintiff had led the police on a high speed pursuit and was thought to have ingested drugs.

To the extent that plaintiff advances a theory that any of the other officers are also liable for excessive force or failure to intervene, the Court finds that their conduct was also objectively reasonable. Summary judgment will be granted on plaintiff's excessive force claims against the individual defendants.

Claims Against City of New London

Plaintiff alleges that his constitutional rights were violated due to the City of New London's failure to promulgate and enforce appropriate practices and customs regarding the use of force and to train and supervise properly its police officers.

A municipality is liable for deprivation of a citizen's rights pursuant to 42 U.S.C. §1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. New York City Dept. of Social Servs, 436 U.S. 658, 694 (1978). A municipality may be held liable for inadequate training, supervision or hiring where the failure to train, hire or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. City of Canton, 489 U.S. at 388. Here, there is no evidence of a policy or custom causing plaintiff's alleged deprivation. Summary judgment will be granted on this claim.

## CONCLUSION

For the foregoing reason, the motion for summary judgment [doc. #26] will be GRANTED. The clerk is instructed to enter judgment in defendants' favor and to close this case.

Dated this __4th__th day of August, 2010 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge